**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Billy G. YOUNG, Defendant-Appellant.**

**No. 81–1536.**

United States Court of Appeals,
Tenth Circuit.

Feb. 22, 1983.

Certiorari Granted Feb. 21, 1984.
See 104 S.Ct. 1271.

Burck Bailey, Oklahoma City, Okl., for defendant-appellant.

David L. Russell, U.S. Atty., F. Michael Ringer, Asst. U.S. Atty., Oklahoma City, Okl., and William J. Hardy, Trial Atty., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before SETH, and McWILLIAMS, Circuit Judges, and BRIMMER, District Judge *.

PER CURIAM.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

Appellant Young, as vice-president and general manager of Compton Petroleum Corporation (Compton Petroleum), entered into a contract to sell crude oil to Apco Oil Corporation in late 1976. Deliveries under

* Of the United States District Court for the District of Wyoming, sitting by designation.

the contract were made between January 1977 and September 1977; but what Apco Oil Corporation actually received from Compton Petroleum consisted of a mixture of fuel oil and condensate crude oil, even though the product had been designated and certified throughout as low sulpher, or Oklahoma "sweet" crude. The evidence indicated that about half of the oil delivered under the contract, approximately 117,250 barrels, was actually fuel oil. Additionally, in reliance on the designation of the oil purchased from Compton Petroleum as crude, Apco filed tallies of the amount of crude oil that it believed it was refining with the Federal Energy Administration, in compliance with government regulations. These incorrect figures were used by the FEA in establishing the national averages of tier categories of oil refined each month for purposes of equalizing the cost of crude oil under its entitlements program.

Compton Petroleum and Billy G. Young, the Appellant, were charged by indictment with eleven counts of mail fraud under 18 U.S.C. § 1341, three counts of willfully and knowingly making false statements to a government agency under 18 U.S.C. § 1001, one count of interstate transportation of stolen property under 18 U.S.C. § 2314, and were also charged with aiding and abetting in the commission of all fifteen counts under 18 U.S.C. § 2. A plea of *nolo contendere* was accepted from Compton Petroleum on the entire indictment and a fine was imposed. Young was tried before a jury in the Western District of Oklahoma. At the close of evidence, Count Ten of the Indictment, alleging mail fraud, was dismissed. Subsequently, the jury returned a verdict of guilty on the mail fraud and false statement charges. The Appellant was acquitted of interstate transportation of stolen property. On appeal, Appellant argues that the trial court erred in admitting statements made out of court by a person no longer living at the time of trial. It is further contended that the Appellant was unfairly prejudiced by remarks made during closing rebuttal argument by the prosecutor.

During the course of the trial, statements made out of Court by Homer Reves, the chief accountant and office manager at Compton Petroleum during the period that the alleged criminal activity took place, were received as evidence, despite the fact that Homer Reves had died more than three years prior to the trial. These were statements Reves had made to accountants working under him, which the Government claims were properly admitted as admissions of an agent of a party opponent under Fed.R.Evid. 801(d)(2)(D). Appellant contends that there is no indication that Homer Reves was his employee or agent and that the Court improperly considered Reves as such simply because the Appellant, as vice-president of Compton Petroleum, was higher in the corporate chain of authority.

■■■ Ordinarily the statement of an accountant made regarding his employment with a party will not be considered hearsay under Rule 801(d)(2)(D), even in a criminal case. *United States v. Diez*, 515 F.2d 892, n. 4 (5th Cir.1975); *Hayes v. United States*, 407 F.2d 189 (5th Cir.1969). The fact that the statement was made by a corporate employee to another corporate employee, rather than to a third party, would not preclude the admission of that statement against the corporation under Rule 801(d)(2)(D). *Mahlandt v. Wild Canid Survival & Research Center, Inc.*, 588 F.2d 626 (8th Cir.1978). However, when such a statement is offered against another corporate employee, instead of the corporation, proper admission under Rule 801(d)(2)(D) will necessarily depend on the nature of the relationship between the declarant and the defendant. *United States v. Pacelli*, 491 F.2d 1108 (2d Cir.1974), cert. denied, 419 U.S. 826, 95 S.Ct. 43, 42 L.Ed.2d 49; *United States v. Coppola*, 479 F.2d 1153 (10th Cir.1973).

■■■ Obviously, expanding the rule to include statements made by any person who is subordinate to a party opponent may create a loophole in the hearsay rule through which evidence not contemplated by the authors of Rule 801 could be admit-

ted. On the other hand, if the factors which normally make up an agency relationship are present, the evidence should not be excluded simply because the statement is offered against a corporate officer, rather than the corporation. Here the prosecution inquired into the relationship between Billy Young and Homer Reves on examination of the two accountants who worked under the deceased declarant during the period in question. Johnnie Milton Huff testified as follows:

Q. Allright, sir. Who was your boss at Compton Corporation?

A. I worked primarily for Bill Young.

Q. And who made the decisions at Compton Corporation so far as you knew?

A. So far as I knew making contract negotiations Bill did that. Bill was in charge of the operations. (Tr. 201.)

Lennox K. Bird also worked as an accountant under Mr. Reves. He testified as follows:

Q. Who told you what to do?

A. Homer Reeves.

Q. And who told Homer Reeves what to do?

A. After—well, that would come from Bill Young.

Q. All right. And is that Mr. Young seated over here in the gray suit?

A. Yes.

Q. All right. May the record show he's identified Mr. Young. How about Mr. White, did Mr. White visit the site at Abilene to tell you or Mr. Reeves what to do or anyone that you ever saw? Did you ever see him telling anyone what to do down there?

A. Not to the best of my knowledge, no.

\* \* \* \* \* \*

Q. Who told you what to do during Mr. White's presidency?

A. Well, again I worked for Homer Reeves directly.

Q. Yes, sir.

A. And that's where I received my orders up until his demise.

Q. Yes sir. And who gave Mr. Reves his directions during Mr. White's presidency?

A. Again, he was under Mr. Young.

This evidence was sufficient to establish an agency relationship between Mr. Young and Mr. Reves for purposes of admitting the statements under Rule 801(d)(2)(D). The testimony was therefore not hearsay and was properly admitted.

Despite the evidentiary propriety of the admission of statements made by Homer Reves, there remains the issue of whether the receipt of such testimony deprived the Appellant of his Sixth Amendment right to confront witnesses testifying against him. The inability to cross-examine a declarant attains particular significance in light of the fact that declarations admitted under Rule 801(d) are defined out of the hearsay rule as a matter of estoppel, as opposed to being excepted from the rule as independently reliable statements. See *United States vs. Porter*, 544 F.2d 936 (8th Cir. 1976); *United States v. Robinson*, 546 F.2d 309 (9th Cir.1976), cert. denied, 430 U.S. 918, 97 S.Ct. 1333, 51 L.Ed.2d 597; Louisell and Mueller, *Federal Evidence*, § 423.

The general rule applied in such situations comes from *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which involved testimony taken at a preliminary hearing on direct examination by the Defendant's attorney and admitted at trial after attempts to find the same witness failed. The court noted that, once it is shown that a witness is not available, "the Clause countenances only hearsay marked with such trustworthiness" which will guarantee "no material departure from the reason of the general rule." Justice Blackmun stated the majority position:

In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible

only if it bears adequate "indicia of reliability." Reliability can be inferred without more in cases where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness. 448 U.S. at 66, 100 S.Ct. at 2539.

A review of the case law on this issue indicates that a case-by-case analysis of the circumstances under which such testimony is offered is required. See *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *United States v. Scholle*, 553 F.2d 1109 (8th Cir.1977); cert. denied 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300.

In a case with facts similar to this, it was held that statements made by a witness who died prior to trial would be admissible under Rule 801(d)(2)(A), (B), and (E). Regarding the applicability of the Confrontation Clause, the court relied on the criteria set forth in *United States v. Scholle*, 553 F.2d 1109 (8th Cir.1977); cert. denied, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300:

> A highly relevant consideration is the degree of prejudice imposed upon the fact-finding process by the declarant's nonavailability. We should consider whether the out-of-court statement bears traditional indicia of reliability, whether it was crucial to the government's case, whether the jury had an opportunity to weigh the credibility of the extrajudicial statement, and whether appropriate instructions were given by the trial judge. 553 F.2d at 1119 (Citations omitted).

Other factors considered in *Scholle* included whether the context of the statement and the identity of the person spoken to bolstered the reliability of the statement. Any motive that the declarant might have had for lying when the out-of-court statement is made is also relevant. Finally, any indication of a failure of memory, perception, or expression should be taken into account.

■ Here, it is significant that the two witnesses who had worked under the direction of Homer Reves testified to essentially the same thing. The context in which the statements were made and the parties to which they were addressed were properly set forth. Neither of the witnesses had any reason not to tell the truth about what had been said to them. The statements were made in the context of the manner in which Compton Petroleum was performing under its contract with the buyer of the oil and were not bold assertions that fraud was being committed. All of this would lend to their reliability. Also, an examination of the record indicates that no less than five other witnesses testified as to the impropriety of the Appellant's conduct. Thus, the challenged statements were cumulative upon a substantial body of evidence tending to prove the same point. This goes far in mitigating any prejudice which might have accrued to the Appellant. Finally, the jury was properly instructed regarding their prerogative to assess the credibility of the witnesses before them and the weight with which any particular testimony may be considered. These factors, taken as a whole, indicate that the Appellant's Sixth Amendment right to confront witnesses testifying against him was not abrogated by the admission of the statements of the deceased accountant.

During his final argument to the jury, the prosecutor made several statements regarding his personal opinion of Mr. Young's guilt. He also made one incorrect reference to the amount by which the Appellant was said to have profited from the activities for which he was indicted. Although no objection was entered by counsel for the Appellant at the time the remarks were made, it is still argued that the prosecutor's conduct substantially prejudiced the Appellant at trial. A review of the trial transcript shows that the prosecutor did indeed put his personal beliefs at issue, as the following statements indicate:

> I think he said that not anyone sitting at this table thinks that Mr. Young intended to defraud Apco. Well, I was sitting there and I think he was. I think he got 85 cents a barrel for every one of those 117,250.91 barrels he hauled and every

bit of the money they made on that he got one percent of. So, I think he did. If we are allowed to give our personal impressions since it was asked of me.

\*     \*     \*     \*     \*     \*

I don't know what you call that, I call it fraud.

You can look at the evidence and you can remember the testimony, you remember what they said and what he admitted they said. I think it's a fraud.

\*     \*     \*     \*     \*     \*

He said—Mr. Bailey said Apco didn't lose, says doesn't think anyone will come back. Well, what he thinks they won't come back but my experience in these matters is when the government does something like this they're going to come back. All that money that Apco got for this stripper and new oil, Al Green at the Apco trust he's going to get some kind of invoices. That's what I think.

\*     \*     \*     \*     \*     \*

I don't know whether you call it honor and integrity, I don't call it that, Mr. Bailey does. If you feel you should acquit him for that it's your pleasure. I don't think your're doing your job as jurors in finding facts as opposed to the law that this Judge is going to instruct you, you think that's honor and integrity then stand up here in Oklahoma courtroom and say that's honor and integrity; I don't believe it.

These portions of the transcript speak for themselves. The prosecutor repeatedly stated his opinion regarding the Appellant's intent to defraud, the likelihood of future prosecutorial action against one other party involved in the scheme, and the duty of the jurors to find the Appellant guilty. The issue has come before this Court enough times in recent years to establish beyond cavil that such statements constitute prosecutorial misconduct. *United States v. Rios*, 611 F.2d 1335 (10th Cir. 1979); *United States v. Latimer*, 511 F.2d 498 (10th Cir.1975); *United States v. Coppola*, 479 F.2d 1153 (10th Cir.1973); *United*

*States v. Ludwig*, 508 F.2d 140 (10th Cir. 1974).

▮ Considering the position of this Court on the issue of prejudicial statements made by the prosecution during argument to the jury, the above-quoted remarks were sufficiently egregious as to constitute plain error. Thus, the failure of Mr. Young's counsel to enter an objection at the time they were made is not fatal to this appeal. *United States v. Ludwig, supra.* The Government argues that the prosecutor's comments were merely a reply to the defense counsel's assertion during his closing argument that no one at the prosecutor's table really believed that the defendant had the intent to defraud. Yet, the rule is clear in this Circuit that improper conduct on the part of opposing counsel should be met with an objection to the court, not a similarly improper response. As stated in *United States v. Ludwig, supra:*

> The government concedes error in this emphatic and personalized vouching for the integrity of the state police but urges us to hold the error to be harmless in view of numerous complaints directed against defense counsel's own conduct. We can give no comfort to the proposition that unprofessional conduct upon the part of defense counsel opens the door to similar conduct by government counsel. 508 F.2d at 143.

See also *United States v. Rios, supra, United States v. Latimer, supra.*

In accordance with the foregoing, the judgment and conviction must be and hereby are reversed and remanded for a new trial.

McWILLIAMS, Circuit Judge, dissents.