**Stanley L. BOREN, Plaintiff–Appellant,**

**Shirley Boren, Plaintiff,**

**v.**

**Donald SABLE, Sr.; and Donald Sable, II, Defendants–Appellees.**

**No. 87–2737.**

United States Court of Appeals, Tenth Circuit.

Oct. 10, 1989.

Les Bowron (Stephen R. Winship with him, on the briefs) of Donald R. Winship & Associates, P.C., Casper, Wyo., for plaintiff-appellant.

Robert M. Shively (Steven R. Helling with him, on the briefs) of Murane & Bostwick, Casper, Wyo., for defendants-appellees.

Before LOGAN, McWILLIAMS and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

In this diversity suit for personal injuries the plaintiff, Stanley L. Boren, appeals from a jury verdict for the defendant, Donald Sable, II. Boren asserts the district court erred in excluding as hearsay the testimony of three witnesses who could have testified regarding nonhearsay admissions of a party-opponent under Fed.R. Evid. 801(d)(2)(D) (1983). Boren asserts the exclusions were prejudicial error requiring reversal and a new trial. We affirm.

Boren's hand was injured during maintenance of a Reed–Prentice plastic injection molding machine located at the Positive Action Tool Company, Inc. (PATCO). Boren was attempting to change a sprue bushing when the mold closed and crushed his hand. Boren brought suit against Sable, a PATCO stockholder, officer and plant manager, as a coemployee for Sable's culpable negligence in instructing Boren on a maintenance method that Sable knew was extremely hazardous.

Boren's theory for recovery was culpable negligence. Under Wyoming workers' compensation law, an injured employee may bring an action against a coemployee for culpable negligence causing the injury. Wyo.Stat. § 27–12–103 (Repl.Vol. Dec. 1977)[1] (remedy against coemployee repealed effective July 1, 1987 and section recodified at § 27–14–104 (Repl.Vol. June 1987)); *see also Bryant v. Hornbuckle,* 728 P.2d 1132 (Wyo.1986); *Barnette v. Doyle,* 622 P.2d 1349 (Wyo.1981). In *Barnette,* the court defined culpable negligence as willful and serious misconduct "such as is done purposely, with knowledge ... as to evidence a reckless disregard of consequences...." *Id.* at 1362 n. 3.

At trial, the district court excluded as hearsay the testimony of three witnesses tendered by Boren. The jury returned a verdict finding Boren sixty per cent negligent and Sable forty per cent negligent.

Under Wyoming law, Boren recovered no damages because his negligence exceeded fifty per cent. *See Barnette,* 622 P.2d at 1361–62.

On appeal Boren asserts the testimony of each of the three witnesses should have been admitted as nonhearsay admissions of a party-opponent under Fed.R.Evid. 801(d)(2)(D), which provides in pertinent part:

A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship....

We will discuss each excluded statement in sequence.

The decision to admit or exclude evidence is within the sound discretion of the district court, and, on appeal, reviewable only for an abuse of discretion. *United States v. Rodriguez–Pando,* 841 F.2d 1014, 1018 (10th Cir.1988). We have defined "abuse of discretion" as "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *United States v. Cardenas,* 864 F.2d 1528, 1530 (10th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989). "[Abuse of discretion] is not merely an error of law or judgment, but an overriding of the law by the exercise of manifestly unreasonable judgment or the result of impartiality, prejudice, bias or ill-will as shown by evidence or the record of proceedings." *United States v. Wright,* 826 F.2d 938, 943 (10th Cir.1987).

Further, when reviewing the trial court's rulings on hearsay objections, we afford the trial court heightened deference. " 'The need for deference to a trial court ruling on a hearsay objection is particularly great because the determination of whether certain evidence is hearsay rests heavily upon the facts of a particular case.' "

---

**1.** Wyo.Stat. § 27–12–103(a) (Repl.Vol. Dec.1977) states:

The rights and remedies provided in this act [§§ 27–12–101 to 27–12–804] for an employee and his dependents for injuries incurred in extrahazardous employments are in lieu of all other rights and remedies against any employ-er making contributions required by this act, or his employees acting within the scope of their employment unless the employees are culpably negligent, but do not supersede any rights and remedies available to an employee and his dependents against any other person.

*United States v. Porter,* 881 F.2d 878, 882 (10th Cir.1989) (quoting *Rodriguez–Pando,* 841 F.2d at 1018). Finally, we review the district court's evidentiary rulings by considering the record as a whole. *Herndon v. Seven Bar Flying Serv., Inc.,* 716 F.2d 1322, 1326 (10th Cir., 1983), *cert. denied,* 466 U.S. 958, 104 S.Ct. 2170, 80 L.Ed.2d 553 (1984).

## A. The Leekley Testimony

### "She sought to say he said he said"

■ At the final pretrial conference Sable objected to Boren's use at trial of "the testimony of Paula Leekley[2] regarding hearsay statements made to her by her deceased husband." Tr. at 27–28, Final Pretrial Proceedings. The gist of the excluded testimony was that Paula Leekley's deceased husband told her that he told Sable during 1979 that the maintenance procedure, which was later used by Boren when he was injured, was dangerous. The district court excluded this testimony as hearsay, and stated "I think it would be prejudicial." *Id.* at 28.

In response to the court's pretrial ruling, Boren filed a "preliminary offer of proof" before trial and a request for the court to reconsider its ruling at the Final Pretrial Conference. R., Tab 60. In this pleading, Boren advised the court of his intentions to elicit testimony from Paula Leekley regarding statements her late husband told her he made to Sable warning Sable about the dangers of replacing sprue bushings in the manner Sable was employing.[3] The trial court refused to admit the testimony.[4]

Boren asserts Scott Leekley's statements constitute admissions of a party-opponent, Sable, and are admissible under Fed.R. Evid. 801(d)(2)(D). Boren contends the testimony of Paula Leekley regarding the statements her deceased husband said he made to Sable is not hearsay because the statements of Scott Leekley were made while he was an agent or servant of Sable, the statements concern a matter within the scope of his employment, and were made to

---

**2.** Paula Leekley's affidavit accompanied Boren's Motion in Opposition to Sable's Motion for Summary Judgment and reads in part as follows:

> 7. That my husband, Scott Leekley, was hired by Donald Sable, II for the purpose of conducting all maintenance procedures and repairs upon the Reed–Prentice equipment located at Positive Action Tool Company, Inc. My husband's employment began in March of 1979, and continued to July of 1979.
>
> \*    \*    \*    \*    \*    \*
>
> 9. That I am aware, ... from information received from my husband, that he did inform Donald Sable, II on numerous occasions prior to May 10, 1983, that the maintenance procedure Mr. Sable was employing, involving the pushing out of the sprue bushing from the back side of the right half of the Reed–Prentice 200TG Plastic Injection Molding Machine, was extremely dangerous.

**3.** The preliminary offer of proof reads as follows:

> When called to testify, Paula Leekley will be prepared to state as follows:
> 1. That prior to Plaintiff, Stanley L. Boren's, injury, her husband, Scott Leekley, had been employed at Positive Action Tool Company, Inc. (hereinafter referred to as "PAT-CO").
> 2. That he had been hired by and was directly subordinate to Defendant, Donald Sable, II (hereinafter referred to as "Don Jr.").

> 3. That his scope of employment consisted of being chief operator and maintenance man for the Reed–Prentice plastic injection molding machines upon Defendants' premises.
> 4. That during his employment and within the scope of his employment, he made numerous complaints to Don Jr. about the lack of safe operation and maintenance procedures at PATCO regarding the plastic injection molding machines. That he specifically warned Don Jr. about the inherent and extreme danger of the maintenance method Don Jr. was employing for the replacement of sprue bushings within the machines.
> 5. That he reiterated his concerns and complaints to his wife, Paula Leekley, on numerous occasions before his employment was terminated by Don Jr. That his employment was terminated because Don Jr. did not appreciate Scott Leekley's complaints about safety.

R., tab 60 at 1–2.

**4.** The trial court did permit Paula Leekley to testify to matters within her knowledge. Paula Leekley testified to a conversation which she observed between her husband and Sable. She testified that her husband told Sable the machines needed to be shut down to check the hydraulic and electrical systems and Sable refused to shut down the machines. Tr. at 359–62.

Paula Leekley while Scott Leekley was employed by Sable. Boren argues the statement should have been admitted to show that Sable had knowledge or imputed knowledge of the dangerousness of the maintenance procedure. We disagree.

In reaching our conclusion, we examine each statement. First, the trial court did not err in refusing to admit the testimony of Paula Leekley regarding what her husband told her. This testimony, if admitted, would be hearsay. Under Fed.R.Evid. 801, an out of court utterance must have two characteristics before it is rendered inadmissible as hearsay: It must be a "statement"—that is, a verbal assertion or conduct intended as an assertion; and, it must be offered to prove the truth of the matter it asserts. Rule 801(a) and (c). Boren argues that the statement is admissible because of the content of the alleged statement which Paula Leekley claims Scott Leekley claimed he made to Sable. Such argument fails to recognize that the propriety of the trial court's exclusion of Paula Leekley's hearsay testimony does not hinge on the content of the statements Scott Leekley allegedly made to Sable, but on the admissibility or inadmissibility of her testimony.[5] Absent a basis for admission under the Rules, Paula Leekley's testimony regarding what her husband told her was inadmissible hearsay.

If we look beyond Paula Leekley's testimony regarding what her husband told her, we find that she sought to testify regarding what her husband told her he said to Sable. This testimony would be double hearsay. Under Fed.Rule 805, hearsay within hearsay is admissible "if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." *Id.* Since there is no basis for admitting Paula Leekley's testimony regarding what her husband allegedly told her, we could end the inquiry here.

We note, however, that the alleged statement of Scott Leekley to Sable was offered for a nonhearsay purpose. Boren sought to introduce the alleged out of court statement to prove that Sable heard and understood the statement, not to prove that what Scott Leekley allegedly said was true. In *Ries Biologicals, Inc. v. Bank of Santa Fe,* 780 F.2d 888 (10th Cir.1986), we recognized the distinction between offering a statement for the truth of the matter asserted and offering the statement to show that it was made. "The oral statements ... were expressly offered for a nonhearsay purpose. The relevance of [the] statements is not their truth or falsity, rather it is the fact the statements were made." *Id.* at 890. The fact that the alleged statement of Scott Leekley to Sable was nonhearsay, does not render admissible the alleged statement of Scott Leekley to Paula Leekley, about which she sought to testify.

Citing *United States v. Young,* 736 F.2d 565 (10th Cir.1983), *rev'd on other grounds,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), Boren argues that Leekley's alleged statements are admissible under Fed.R.Evid. 801(d)(2)(D). We are not persuaded that *Young* is dispositive here. In *Young,* the vice president and general manager of a corporation was charged with mail fraud and making false statements to the government in connection with the sale of fuel oil represented to be crude oil. During the trial the court admitted the out of court statements of Reves, the chief accountant for the corporation, although Reves died more than three years prior to trial. The government claimed these statements made by Reves to the accountants working under him were properly admitted as admissions of an agent of a party-opponent under Fed.R.Evid. 801(d)(2)(D). Young argued there was no evidence Reves was his employee or agent and the court improperly considered Reves as such solely because of Young's higher position in the corporation. *Id.* at 567. The court analyzed the relationship between Young and Reves, and determined the admission of the unspecified statements was proper under Rule 801(d)(2)(D). *Id.* at 568.

We distinguish *Young* from the instant case. First, the type of statement admitted into evidence in *Young* is different from the type of statement excluded by the trial

---

5. In their briefs, the parties do not address either Fed.R.Evid. 804 or Fed.R.Evid. 805.

court herein. In *Young,* the testimony admitted was testimony regarding what Reves told accountants working under him. We described the context as follows:

> During the course of the trial, statements made out of Court by Homer Reves, the chief accountant and office manager at Compton Petroleum during the period that the alleged criminal activity took place, were received as evidence, despite the fact that Homer Reves had died more than three years prior to the trial. These were statements *Reves had made to accountants* working under him, which the Government claims were properly admitted as admissions of an agent of a party opponent under Fed.R. Evid. 801(d)(2)(D). Appellant contends that there is no indication that Homer Reves was his employee or agent and that the Court improperly considered Reves as such simply because the Appellant, as vice-president of Compton Petroleum, was higher in the corporate chain of authority.

*Id.* at 567 (emphasis added). Unlike the instant case, the challenged statements in *Young* were those of Reves, not statements Reves claimed to have made to another person or statements Reves claimed were made by another person. In the instant case, the challenged statements were those the employee, Leekley, claimed he made to Sable.

Second, the vehicles for admission of the evidence in the two cases are different. In *Young,* the testifying witnesses heard the statements of Reves. In the instant case, the vehicle for admission of the testimony was Paula Leekley, who did not hear the statements but who claims her deceased husband told her he made the statements. In order to elicit the testimony regarding statements Scott Leekley allegedly made to Sable, the trial court would have to have ignored the first and second levels of hearsay from Paula Leekley. This problematic detail was not present in *Young.*

Third, the issues presented in *Young* are different from those presented herein. In *Young* the Appellant argued the trial court erred in admitting statements made out of court by a person no longer living at the time of trial. The focus of *Young* was whether the government established an agency relationship between Reves and Young and whether the Sixth Amendment right to confront witnesses testifying against a person was abrogated by the admission of the statements of the deceased accountant. *Id.* at 567–68. The alleged statements of the decedent Scott Leekley, however, are not on the same evidentiary footing as the statements of the decedent Reves. In the instant case, the evidentiary inquiry is more of a mechanical question—whether Boren's characterization of the alleged statement of Scott Leekley to Sable dissolves the multiple levels of hearsay standing in the way of admitting the evidence. In our view, neither *Young* nor Fed.R.Evid. 801(d)(2)(D) dissolves the layers of hearsay rendering the content of the alleged warning admissible.

Further, the trial court did not err in determining that this evidence should be excluded as prejudicial. Even though the trial court properly excluded the evidence as simple hearsay, the fact that the statements at issue before the trial judge included so many layers of hearsay bolsters the court's exclusion of the evidence.

As said in 4 Weinstein & Berger, *Weinstein's Evidence,* ¶ 805[01]:

> Theoretically, there would be no objection to the number, provided each conformed to an exception. Actually, however, as a comment pointed out
>
>> with every increased level of hearsay there is a corresponding decrease in reliability. Every level of hearsay provides another possibility that the facts were inaccurately reported by the declarant, either intentionally or unintentionally, or misunderstood by the person to whom the statement was made.
>
> Certainly, the trial judge has discretion under Rule 403 to exclude a statement of multiple hearsay, even if each included portion meets the requirements of an exception, when he finds the statement so unreliable that its probative value is substantially outweighed by the danger of prejudice and confusion. As in other

situations where Rule 403 is applied, the judge's determination will depend on the particular facts of the case. The kind of case, significance of the statement, and the circumstances in which the various component parts were made, are all factors for the court to consider. Even if only two steps of hearsay are involved, admission of the statement may be too dangerous in a given case. "Multiple hearsay," it must always be remembered, "is, of course even more vulnerable to all the objections which attach to simple hearsay."

*Id.*, ¶ 805[01] (citations omitted). Under Fed.R.Evid. 403, evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.* Without question, the trial court properly determined that the potential for unfair prejudice exceeded the probative value of this evidence which had layers of unreliability.

### B. The Stoneking Statement

■ Shirley Boren testified Bert Stoneking, the shop foreman, Tr. at 416, visited her husband at the hospital while Boren was recuperating from his hand injury. Stoneking brought a t-bar with him. Shirley Boren began to testify regarding what Stoneking said at the hospital. Sable lodged a hearsay objection. Boren made an offer of proof that Shirley Boren would testify that Stoneking said the t-bar was a new method they had just come up with to change the sprue bushing.[6] Tr. at 416–418. The court excluded the statements as hearsay. Tr. at 417. The record reads as follows:

> [COUNSEL FOR BOREN]: And I plan to go ahead and ask if there was anything unusual. And as an offer of proof I was going to find out whether or not Mr. Stoneking brought up this so-called T-bar.

THE COURT: Very well. You may ask her then.

Q. ([BY COUNSEL FOR BOREN]): Do you remember anything unusual about the visit of Bert Stoneking to your husband?

A. Yes. Bert came in, I don't know, it was either probably the next evening, or next afternoon while I was there, and he brought this T-bar. I had never seen it before. And he showed it to Stan, and said that—

[COUNSEL FOR SABLE]: Objection. Hearsay.

THE WITNESS: I'm sorry about that.

[COUNSEL FOR BOREN]: We are getting into hearsay.

THE COURT: You can't say what was said.

THE WITNESS: It was just a piece of iron or steel or something that was shaped in a "T."

Tr. at 417. At trial, when he said "We are getting into hearsay," Boren correctly characterized the testimony. Counsel did not lodge a Rule 801(d)(2)(D) objection. The only offer of proof went to whether Mr. Stoneking brought the t-bar to the hospital. "And as an offer of proof I was going to find out whether or not Mr. Stoneking brought up this so-called T-bar." Tr. at 417. The court permitted counsel's question within the offer and properly excluded the testimony that counsel conceded was hearsay.

On appeal, Boren contends the testimony of Shirley Boren regarding her conversation with Bert Stoneking should not have been excluded as hearsay because it was an admission by an agent or servant of Sable under Fed.R.Evid. 801(d)(2)(D). First, we need not consider this argument. Under Fed.R.Evid. 103, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and ... in case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from

---

**6.** Sable did not object to the evidence offered on the basis that it was evidence of a post-accident change.

the context within which questions were asked." *Id.* The record reveals that counsel abandoned his quest to admit the hearsay testimony and chose only to seek admission of the nonhearsay observations of the witness at the hospital. Consequently, we need not address the Rule 801(d)(2)(D) argument on appeal. In this case, however, we address the arguments raised.

For a statement to be admissible under Rule 801(d)(2)(D), the offering party must make a three-part showing. The party must establish the existence of the employment relationship independent of the declarant's statement offered as evidence. *Mackey v. Burke* 751 F.2d 322, 326 n. 3 (10th Cir.1984) (diversity case applying Kansas law); *United States v. Portsmouth Paving Corp.,* 694 F.2d 312, 321 (4th Cir. 1982). *See also Nekolny v. Painter,* 653 F.2d 1164, 1171 (7th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982). The statement must be made during the existence of the declarant's "agency or employment." *United States v. Summers,* 598 F.2d 450, 457–59 (5th Cir.1979); *Securities & Exch. Comm'n v. Geon Indus., Inc.,* 531 F.2d 39, 43 n. 3 (2d Cir.1976). The statement must concern a matter within the scope of declarant's employment. *MCI Communications Corp. v. American Tel. & Tel. Co.,* 708 F.2d 1081, 1143 (7th Cir.), *cert. denied,* 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983). Because the Stoneking statement fails under the agency requirement, we examine this requirement in detail.

Rule 801(d)(2)(D) allows the introduction into evidence of "a statement by [the party-opponent's] agent or servant concerning a matter within the scope of the agency or employment". However, the Federal Rules of Evidence do not define the terms "agent" or "servant". The use of the terms "agent" or "servant" without definition evidences Congress' intent to describe the traditional master-servant relationship as understood by common law agency doctrine. *Community for Creative Non–Violence v. Reid,* — U.S. —, 109 S.Ct. 2166, 2172, 104 L.Ed.2d 811 (1989). Use of the term "scope of employment" in Rule 801(d)(2)(D) is additional evidence of Con-

gress' intent that common law agency principles be used in applying Rule 801. *Id.* As the Federal Rules of Evidence are intended to have uniform nationwide application, Fed.R.Evid. 101, we apply a federal rule of agency, rather than relying on state agency law. *Reid,* — U.S. at —, 109 S.Ct. at 2173.

The common law definition of agency is contained in the Restatement (Second) of Agency § 1 (1958) which states:

(1) Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.

(2) The one for whom action is to be taken is the principal.

(3) The one who is to act is the agent.

*Id.* at § 1; *see also United States v. Koenig,* 856 F.2d 843, 847 n. 1 (7th Cir.1988) (examination of common law of agency quotes Restatement (Second) of Agency § 1); *ARA Leisure Services, Inc. v. National Labor Relations Bd.,* 782 F.2d 456, 459–60 (4th Cir.1986) (common law agency analyzed under "right to control" test of Restatement (Second) of Agency § 220 (1958)); *Short v. Central States, S.E. & S.W. Areas Pen. Fund,* 729 F.2d 567, 572 n. 3 (8th Cir.1984) (reformulation of common law test appears in Restatement (Second) of Agency § 220).

We considered the question in *United States v. Young,* 736 F.2d 565 (10th Cir. 1983), *rev'd on other grounds,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). In reviewing the admissibility of the statements this court stated:

The fact that the statement was made by a corporate employee to another corporate employee, rather than to a third party, would not preclude the admission of that statement against the corporation under Rule 801(d)(2)(D). However, when such a statement is offered against another corporate employee, instead of the corporation, proper admission under Rule 801(d)(2)(D) will necessarily depend on

the nature of the relationship between the declarant and the defendant.

Obviously, expanding the rule to include statements made by any person who is subordinate to a party opponent may create a loophole in the hearsay rule through which evidence not contemplated by the authors of Rule 801 could be admitted. On the other hand, if the factors which normally make up an agency relationship are present, the evidence should not be excluded simply because the statement is offered against a corporate officer, rather than the corporation.

*Id.* at 567–68 (citations omitted). The evidence showed Young was in charge of corporate operations and decisions, and Reves received directions from Young. *Id.* at 568. Without discussion of the factors going into the decision, the court found the evidence sufficient to establish an "agency relationship" between Young and Reves for purposes of admitting the statements under Rule 801(d)(2)(D). *Id.* at 568.

Other circuits have analyzed the agency relationship under Rule 801(d)(2)(D) in general common law terms. In *United States v. Paxson*, 861 F.2d 730 (D.C.Cir.1988) the court affirmed the admission of statements by Lassetter against Paxson under Rule 801(d)(2)(D). Paxson argued on appeal that Lassetter was not an agent of him personally, rather Lassetter was a coemployee of the same corporation. The court rejected this argument as a hypertechnical construction of the Rule. It analyzed the relationship between Paxson and Lassetter. Lassetter was the vice president of the corporation and reported directly to Paxson, the president, who made the key decisions. Paxson owned the majority of the stock in the privately held family corporation. The court concluded an agency relationship was present. *Id.* at 734 (citing *Young*, 736 F.2d at 565). In *Crawford v. Garnier*, 719 F.2d 1317 (7th Cir.1983), the court held statements were properly admitted as the statements of an agent under Rule 801(d)(2)(D) where the defendant acknowledged Johnson was his subordinate and responsible for handling the applications. In *Nekolny*, the court admitted the statements of Hickey against Painter, where Painter testified

Hickey was her liaison or advisor to the program that employed the three plaintiffs, and she admitted she met with Hickey almost every day. Consistent with our holding in *Young*, these cases indicate where a party-opponent controls the operations of the corporate employer and controls the daily tasks of the declarant an agency relationship is established for purposes of Rule 801(d)(2)(D).

We are not convinced that Stoneking was Sable's agent at the time he made the statements to Shirley Boren. It is important to note that this suit was not against the corporate employer but rather against Sable, a coemployee. Sable was a corporate shareholder and officer. Tr. at 232. However, Sable's testimony that he had turned over control of the plant to Boren in 1983 convinces us that Sable did not have the type of control over Stoneking's actions that creates an "agency relationship" for purposes of Rule 801(d)(2)(D).

Sable testified he considered himself an absentee owner in relationship to PATCO in 1983. Tr. at 255. He said that Boren was the plant manager at the time of the accident on May 10, 1983. *Id.* Boren's duties as plant manager included everything that was done at the plant. Boren had authority to hire and fire people, and everything was done under his supervision. Tr. at 265–66. Based on Boren's extensive duties as plant manager we cannot conclude that Stoneking had an "agency relationship" with Sable in 1983 at the time of his admissions to Shirley Boren. An "agency relationship" is not created solely by the fact that the purported principal is a corporate officer. The district court did not abuse its discretion in excluding Shirley Boren's testimony as hearsay.

### C. The Bohnet Statement

On redirect examination Gene Corson testified he had never observed Rod Bohnet place his hand between the molds to use a metal bar to remove the sprue bushings as Boren did when his hand was injured. Tr. at 311. Boren's attorney attempted to establish Corson made a prior inconsistent

statement in his deposition.[7] Sable objected to this testimony as a mischaracterization of the time period involved in the case. The court ruled the statement was hearsay and was made subsequent to the time of the accident and ordered the jury to disregard the testimony. Tr. at 313.

Out of the presence of the jury, Boren made an offer of proof that Bohnet was released from employment prior to the date of the injury, and Corson's deposition statement shows Bohnet used the bumping method to remove the sprues prior to the date of injury. Sable disputed whether the emphasized language meant the t-bar was a single metal rod without a handle or a rod with the handle extending from it. The court asked Corson directly whether the rod had a handle or rather required the user to place a hand between the molds. Corson responded the t-bar had a handle. The court ruled the statement was hearsay and excluded it. Tr. at 315.[8]

Boren asserts the district court erred in excluding Corson's testimony regarding conversations he had with Rod Bohnet, because the testimony constituted an admission of a party-opponent made by the party's agent or servant admissible under Fed. R.Evid. 801(d)(2)(D). Applying the test for agency under Rule 801(d)(2)(D), discussed within, we are not convinced that Bohnet was Sable's "agent" at the time he made the statements to Corson which form the basis of Corson's deposition testimony.

Sable testified that he turned over management of the plant to Boren in 1983 and he considered himself an absentee owner. Tr. at 255. Boren has failed to indicate where in the record it is established that Sable resumed management of the corporation during January 1985, the time at which Bohnet made his "admission" to Corson. Boren relies simply on the fact that Corson and Bohnet "were employed in subordinate positions under [Sable] who was the President and Chief Executive Officer of [PATCO]." Appellant's Brief at 36. Under a substantive analysis of Bohnet's relationship to Sable, we cannot conclude that Bohnet's mere occupation of a subordinate position in the corporate chain of command is sufficient to establish an "agency relationship" for the purpose of admission under Rule 801(d)(2)(D). Boren has made no showing that Sable controlled the daily performance of Bohnet at the time he made the alleged "admissions". In *Young*, we stated "expanding the rule to include statements made by any person who is subordinate to a party opponent may create a loophole in the hearsay rule through which evidence not contemplated by the authors of Rule 801 could be admitted." 736 F.2d at 567. We decline to create such a loophole for Bohnet's admissions solely upon a showing that he occupied a

7. In the deposition Corson made the following answers:

"Question: Is there a reason you remember particularly removing the sprue bushing?

\* \* \* \* \* \*

"Answer: Yeah. I had hired a man back by the name of Rod Bohnet ... and the reason I hired him back he is a very experienced man with that Stickman and all Reed machines. And I went downtown to get some part for something, come back, and he was removing a sprue not the way I wanted it removed....

\* \* \* \* \* \*

"And I stopped him in the middle of it. And that's when he informed me that this is the way he used to remove sprues. And I said, 'Well, we don't do it that way, we do it my way.'

"Question: Okay. Could you be a little more specific about what it was you didn't like about the way he was removing the sprue?

"Answer: He had a T-bar, which is *a round piece of metal with the handle off of it,* probably two foot long, maybe longer, and he was holding it in between the mold halves and bumping the mold closed on it, just bump, bump, bump to push the sprue bushing out. He was using the machine to do it, and I put a stop to it. I had walked in just as he started it, and I said 'No, we remove the mold. We take the mold apart and go over next door, and that's what we got to press to push that out.'"

Tr. at 312–13 (emphasis added).

8. In excluding the testimony, the trial court stated:

I think it is hearsay, just plain hearsay as to something that happened after the accident. Mr. Bohnet is here in the courtroom. You can call him and ask him if that was the way he was instructed, but you can't get it in by the back door through this hearsay method.

Tr. at 315.

position subordinate to Sable. There must be some evidence that Sable directed Bohnet's work on a continuing basis in order to establish the agency relationship for the purposes of Rule 801. See discussion of evidence in *Young*, 736 F.2d at 568. The district court did not abuse its discretion in excluding Corson's deposition testimony as hearsay.

### Conclusion

In summary, the trial court properly excluded the testimony of Paula Leekley, Shirley Boren and Gene Corson as inadmissible hearsay.

AFFIRMED.