57 F.3d 1081
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff/Appellee,
v.
Dinh Huu TRAN, Defendant/Appellant.
 No. 94-6129.
 United States Court of Appeals, Tenth Circuit.
 May 12, 1995.
 
 Before BRORBY and EBEL, Circuit Judges, and BRATTON*, District Judge.
 ORDER AND JUDGMENT**
 BRATTON, Senior District Judge.
 This is an appeal following the conviction by a jury of Defendant Dinh Huu Tran for three counts of money laundering in violation of 18 U.S.C. Sec. 1956 (a)(1)(B)(ii). On appeal, Defendant contends that: (1) there was insufficient evidence to support a conviction against him on Counts 9, 10, and 12; (2) the trial court erred in admitting the summary of telephone toll records; and (3) the government violated his Fifth Amendment rights by inquiring at trial about his failure to produce invoices or other business records in response to the grand jury subpoena to substantiate his purchase of computer memory chips from sources other than his codefendant. For the reasons below, we affirm the district court.
 Background
 On February 6, 1990, a federal grand jury charged Defendant Tran and Co-defendant Phat Viet Doan with one count of conspiracy to transport stolen computer memory chips in interstate commerce, one count of transportation of stolen goods, and six counts of money laundering. On August 4, 1993, Co-defendant Doan pleaded guilty to Count I of the Indictment, the conspiracy count.
 Sometime in early 1990, Defendant fled to Vietnam. In July of 1993, Vietnamese officials returned Defendant to the United States. On November 3, 1993, a federal grand jury returned a Superseding Indictment against Defendant, adding four additional counts of money laundering to the original Indictment.
 On December 21, 1993, a jury found Defendant guilty of Counts 9, 10, 11, and 12 and hung as to Count 2. The jury acquitted Defendant as to Counts 1, 3, 4, 5, 6, 7, and 8. On February 1, 1994, Defendant filed a motion for Judgment of Acquittal. The district court granted Defendant's motion as to Count 11 but denied the motion as to Counts 2, 9, 10, and 12. This appeal followed.
 Discussion
 I. Sufficiency of the Evidence
 Counts 9, 10, and 12 of the Superseding Indictment charged Defendant with cashing checks from the sale of stolen computer memory chips in a manner designed in whole or in part to avoid a transaction reporting requirement under federal law. Defendant argues that the government failed to present sufficient evidence to establish money laundering under 18 U.S.C. Sec. 1956(a)(1)(B)(ii).[1]
 The district court instructed the jury that in order to establish money laundering under Sec. 1956(a)(1)(B)(ii) the government had to prove each of the following elements:
 First: That defendant, Dinh Huu Tran willfully conducted or caused to be conducted a financial transaction;
 Second: That defendant knew at the time of the financial transaction that the money represented proceeds of some unlawful activity.
 Third: That the money involved (the checks from Cal-Abco) was in fact the proceeds of specified unlawful activity; and
 Fourth: That the defendant knew at the time the checks were cashed that the transaction was designed in whole or in part to avoid a transaction reporting requirement under federal law.
 Defendant contends the government failed to establish the second and third elements.
 "[I]n reviewing the sufficiency of the evidence, the test is whether the evidence 'both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt."' United States v. Sanders, 928 F.2d 940, 944 (10th Cir.), cert. denied, 502 U.S. 845, 112 S.Ct. 142, 116 L.Ed.2d 109 (1991). Moreover, "the evidence presented to support the conviction 'must be substantial; that is, it must do more than raise a mere suspicion of guilt."' Id.
 Defendant claims the government failed to prove he knew at the time of the financial transaction that the money represented proceeds of some unlawful activity. We disagree. The government presented evidence showing that Phat Viet Doan, an unemployed eighteen year old with no computer business of his own, delivered 8,000 memory chips to Defendant's residence. These memory chips were not packaged but were loose in a plastic bag. Moreover, Mr. Doan did not provide Defendant with an invoice, and Defendant did not request one. In contrast, when Defendant had Mr. Doan deliver memory chips to Cotronics, a legitimate business, the memory chips were packaged in tubes with the invoice enclosed. Mr. James Monk, a government witness, also testified that in 1988 the market conditions of computer memory chips were extremely tight. The government then stressed the significance of the large number of memory chips Mr. Doan was able to provide to Defendant in one delivery at a time when it was very difficult to find memory chips.
 Additionally, the government presented evidence showing Defendant attempted to sell the memory chips to two different businesses on three separate occasions, but the businesses rejected them because they found the memory chips to be suspicious. In fact, Dr. Dale Donnell, Defendant's memory chip broker, testified he told Defendant Louis Woodhaddock had rejected the memory chips because Mr. Woodhaddock believed the chips were possibly stolen. Dr. Donnell further testified he returned the memory chips to Defendant and told him he did not want to deal with stolen chips. When all of this evidence is viewed in the light most favorable to the government, we believe it is sufficient to permit the jury to infer Defendant knew the chips were stolen.
 Defendant also argues the government failed to prove the checks he cashed at Nelsun Liquor Store in November and December of 1988 were proceeds from the sale of stolen memory chips. Defendant contends the government failed to prove the memory chips he sold to Cal-Abco were, in fact, stolen from AT&T.
 According to the government's theory of the case, in 1988 Phat Viet Doan was Defendant's primary supplier of computer memory chips. To establish this fact, the government presented an analysis of Defendant's bank and business records. The government presented evidence showing total credits and debits for Defendant's six bank accounts. This evidence indicated Defendant withdrew $3,689,369.07 from his accounts during the months of March through December of 1988. Of this amount, only $50,000 could be traced to purchases of chips from sources other than Phat Viet Doan. The government also presented evidence the memory chips Cal-Abco bought from Defendant in November and December of 1988 were TC 511000-10, the type of memory chips stolen from AT&T. Finally, the government presented evidence Defendant kept an inventory of memory chips, indicating the chips sold to Cal-Abco were stolen from AT&T. This evidence refuted Defendant's argument that he did not have AT&T in-house memory chips to sell to Cal-Abco because the conspiracy with Phat Viet Doan ended sometime in September of 1988. Thus, the jury had evidence from which they could reasonably conclude that the memory chips Defendant sold to Cal-Abco were stolen from AT&T. Accordingly, we find that the jury had sufficient evidence to conclude that the government met all of the elements of money laundering under Sec. 1956(a)(1)(B)(ii).
 II. Summary of Telephone Toll Records
 Defendant objects to the admission into evidence of government's Charts 5-12. Pursuant to Fed. R. Evid. 1006, these charts visually depicted information contained in Government Exhibit 1-A, a summary of telephone toll records received from Pacific Bell, Southwestern Bell and Renick Information Systems. Defendant claims the records were inadmissible hearsay. The government contends Charts 5-12 were not admitted into evidence but were used solely for demonstrative purposes.
 Evidentiary rulings are committed to the discretion of the trial court and are only reviewed for an abuse of discretion. United States v. McIntyre, 997 F.2d 687, 698 (10th Cir. 1993). When reviewing the trial court's rulings on questions of the admissibility of hearsay evidence, we afford the trial court heightened deference. Boren v. Sable, 887 F.2d 1032, 1033 (10th Cir. 1989). We review the trial court's evidentiary rulings by considering the record as a whole. Id. at 1034.
 Prior to trial, Defendant's counsel stipulated to the admissibility of the telephone toll records received from Pacific Bell, Southwestern Bell and Renick Information Systems as business records under Fed. R. Evid. 803(6). Based upon that stipulation, the government did not subpoena records custodians from the telephone companies to provide the requisite foundation testimony.
 "As a general rule, a stipulation is a judicial admission binding to the parties making it, absent special considerations." Vallejos v. C.E. Glass Co., 583 F.2d 507, 510 (10th Cir. 1978), see also, Wheeler v. John Deere Co., 935 F.2d 1090, 1097 (10th Cir. 1991). Since Defendant stipulated to the admissibility of the telephone toll records as business records, the government was not required to introduce evidence authenticating the telephone toll records. See Ponderosa System, Inc. v. Brandt, 767 F.2d 668, 670-71 (10th Cir. 1985). Having stipulated to their authenticity, Defendant waived his right to object to the admission of the telephone toll records. See, e.g., United States v. Gonzalez-Acosta, 989 F.2d 384, 390 (10th Cir. 1993) (Defendant waived right to challenge amount of marijuana for sentencing purposes where she had stipulated to its weight for trial purposes); see also, United States v. Lepanto, 817 F.2d 1463, 1466 n.3 (10th Cir. 1987) (Having stipulated to Government's Exhibit 5A, Defendant waived any challenge to its authenticity for purposes of its admission). Accordingly, because Government Exhibit 1-A was admissible, the government's use of Charts 5-12, which visually depicted the information contained in Government Exhibit 1-A, was proper.
 III. Defendant's Fifth Amendment Rights
 Defendant's next contends the government violated his Fifth Amendment privilege against self-incrimination by inquiring about his failure to produce invoices or other business records in response to the grand jury subpoena. At trial, the government elicited testimony from Sergeant Killebrew concerning Defendant's failure to provide invoices for his purchases of computer memory chips. On cross-examination, the government elicited similar testimony from Defendant. Defendant failed to object to the government inquiring about these matters.
 To preserve an alleged error for appeal, a party must make a timely and proper objection. United States v. Lonedog, 929 F.2d 568, 570 (10th Cir.), cert. denied, 502 U.S. 854, 112 S.Ct. 164, 116 L.Ed.2d 129 (1991). If the party fails to object, we only review for plain error. Id. "'Plain error is "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.""' Id. (citations omitted).
 
 
 1
 Defendant claims his business records and invoices were essential to the government's case because the government needed them to prove he did not have a legitimate source for the memory chips he sold to Cal-Abco. Defendant argues that the act of complying with the subpoena, in this case admitting there were no invoices, would have forced him to incriminate himself. For this reason, Defendant claims he chose not to comply with the subpoena, preferring to remain silent pursuant to the Fifth Amendment.
 
 
 2
 The government contends Defendant waived his Fifth Amendment privilege against self-incrimination when he (1) failed to assert the privilege during the grand jury proceedings; (2) voluntarily complied with the grand jury subpoena by producing the business records of CD Computer, Defendant's business; and (3) testified at trial.
 
 
 3
 The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. The Fifth Amendment privilege against compulsory self-incrimination extends to grand jury proceedings. United States v. Davis, 780 F.2d 838, 844 (10th Cir. 1985). Both grand jury witnesses and targets are entitled to raise the Fifth Amendment privilege against self-incrimination during questioning. United States v. Washington, 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977). However, the privilege is deemed waived unless it is invoked. Garner v. United States, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976). "Moreover, it is well settled that invocation of the Fifth Amendment privilege in a grand jury proceeding is not admissible in a criminal trial, where guilt or innocence is actually at stake." Id. at 191.
 
 
 4
 There is no indication in the record that Defendant invoked his privilege against self-incrimination before the grand jury. A review of the record reveals that prior to Defendant's grand jury testimony the government advised him of his right to remain silent. The government also provided an interpreter for Defendant. After being advised of his rights and after Defendant indicated he understood his rights, the government asked Defendant if he wanted to proceed with his testimony; to this question, Defendant replied yes. The record also supports the government's claim that Defendant voluntarily produced the business records the grand jury requested. Because Defendant never invoked his Fifth Amendment privilege against self-incrimination, he waived the privilege. Therefore, we find no error in the government inquiring of Sergeant Killebrew regarding Defendant's failure to produce invoices for the purchase of computer memory chips.
 
 
 5
 Defendant's argument that the government violated his Fifth Amendment privilege against self-incrimination by inquiring about his failure to provide invoices or other business records during cross-examination is similarly without merit.
 
 
 6
 "'[A] defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination."' United States v. Rackstraw, 7 F.3d 1476, 1480 (10th Cir. 1993) (citing McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d. 711 (1971)). "'The defendant who testifies has chosen to make an issue of his credibility. The government, accordingly, has a right to challenge the defendant's story on cross-examination."' Id. at 1481 (citing United States v. Hernandez, 646 F.2d 970, 978-79 (5th Cir. Unit B), cert. denied, 454 U.S. 1082, 102 S.Ct. 638, 70 L.Ed.2d 617 (1981).
 
 
 7
 At trial, Defendant testified on direct examination that he purchased computer memory chips from several "sources." Defendant then identified eight companies, other than Mr. Doan, as his "sources." Defendant further testified he purchased only 4 to 15 percent of his chips from Phat Viet Doan. On cross-examination, the government inquired about the whereabouts of the invoices of the other companies from which Defendant purchased memory chips. The government also asked Defendant about the documents he produced in response to the grand jury subpoena and the absence of the invoices from those documents. This line of questioning related to the subject matter of Defendant's direct examination, and the government had the right to challenge Defendant's story. Accordingly, we find no error in the government questioning Defendant about his failure to provide the invoices on cross-examination.
 
 
 8
 AFFIRMED.
 
 
 
 *
 Honorable Howard C. Bratton, Senior District Judge of the United States District Court for the District of New Mexico, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [1]
 Section 1956(a)(1)(B)(ii) provides:
 (a) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity -
 (B) knowing that the transaction is designed in whole or in part -
 (ii) to avoid a transaction reporting requirement under State or Federal law, shall be sentenced ....