

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-12-2003

# Plastipak Pkg Inc v. DePasquale

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2670

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Plastipak Pkg Inc v. DePasquale" (2003). *2003 Decisions.* Paper 275.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/275

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 02-2670, 02-2935 & 02-3262
_____

PLASTIPAK PACKAGING, INC.,

Appellant in Docket Nos. 02-2935 & 02-3262

v.

FRED PETER DEPASQUALE, MARK J. DEPASQUALE;
CARL B. DEPASQUALE; MARIO C. DEPASQUALE

FRED P. DEPASQUALE,

Appellant in Docket No. 02-2670

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA
(District Court No. 99-cv-00245)
District Court Judge: Hon. Robert J. Cindrich

_____

Submitted Under Third Circuit LAR 34.1(a)
July 22, 2003

Before: Alito, Fuentes, <u>Circuit</u> <u>Judges</u>, Surrick*, <u>District</u> <u>Judge</u>

(Filed  September 12, 2003)

_____

OPINION OF THE COURT
_____

_____

* The Honorable R. Barclay Surrick, District Judge for the Eastern District of
Pennsylvania sitting by designation.

1

PER CURIAM:

Plastipak Packaging Inc. ("Plastipak") is a manufacturer of plastic containers. Mac-Jam, Inc. d/b/a Regent Bottling Co. ("Mac-Jam") is a soft drink bottler. From the early 1980s until sometime in 1995, Mac-Jam and Plastipak had an ongoing business relationship in which Plastipak supplied Mac-Jam with plastic bottles. In December of 1995, Plastipak filed a lawsuit against Mac-Jam alleging breach of contract. In February of 1999, Plastipak obtained a verdict and judgment against Mac-Jam in the amount of six hundred thirteen thousand seven hundred thirty-two dollars and twenty-six cents ($613,732.26). Shortly thereafter Mac-Jam filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

In an effort to collect on the judgment Plastipak filed the instant lawsuit against Mac-Jam's sole shareholder, Fred P. DePasquale ("DePasquale"), alleging, inter alia, that DePasqaule was the alter ego of Mac-Jam, and that DePasquale had engaged in the fraudulent transfer of property under the Pennsylvania Uniform Fraudulent Transfer Act ("UFTA")[1] to hinder Plastipak in its collection efforts. On December 7, 2001, a jury found that Mac-Jam was the alter ego of DePasquale and judgment was entered against him in the amount of seven hundred sixty-seven thousand three hundred ninety-three dollars and sixty-two cents ($767,393.62). The jury found in favor of DePasquale on the count alleging fraudulent transfer. DePasquale has filed an appeal from the District Court's denial of his Motion for Judgment As A Matter of Law And, In The Alternative, For A New Trial, contesting the finding of alter ego liability. Plastipak has filed a cross appeal alleging that the District Court erred in excluding testimony at trial and requesting a new trial on the fraudulent conveyance claim. Plastipak also challenges an injunction entered by the District Court preventing Plastipak from executing on DePasquale's life insurance policy.

---

[1]42 Pa. Cons. Stat. § 5101, et seq.

2

We have jurisdiction over these appeals pursuant to 28 U.S.C. § 1291.

## I.  DePasquale's Appeal:  Jury's Alter Ego Finding and Court's Charge

### A.  *Judgment as a Matter of Law*

The District Court denied DePasquale's post-trial motion for judgment as a matter of law, which argued that the jury's decision to impose alter-ego liability was not supported by the evidence.  "We review the District Court's decision denying a motion for judgment as a matter of law *de novo*, and apply the same standard that the District Court did, namely whether, viewing the evidence in the light most favorable to the non-movant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability."  W.V. Realty Inc. v. Northern Ins. Co. of New York, 334 F.3d 306, 311 (3d Cir. 2003) (citing Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993)).

Under Pennsylvania law, courts apply a totality of the circumstances test when determining whether to pierce the corporate veil and impose alter ego liability.  "[T]here is no definitive test for piercing the corporate veil."  First Realvest, Inc. v. Avery Builders, Inc., 600 A.2d 601, 604 (Pa. Super. 1991).  Pennsylvania generally recognizes that the corporate veil may be pierced "whenever necessary to avoid injustice."  Rinck v. Rinck, 526 A.2d 1221, 1223 (Pa. Super. 1987).  We have stated that "[f]actors considered under Pennsylvania law, for example, with respect to the alter ego theory include, but are not limited to, the following: '[T]he failure to observe corporate formalities; non-payment of dividends; insolvency of debtor corporation; siphoning the funds from corporation by dominant shareholders; non-functioning of other officers and directors; absence of corporate records; whether the corporation is a mere facade for the operations of a common shareholder or shareholders; and gross undercapitalization.'"  Eastern Minerals & Chemicals Co. v. Mahan, 225 F.3d 330, 333 n.7 (3d Cir. 2000) (quoting Wheeling-Pittsburgh Steel Corp. v. Intersteel, Inc., 758 F. Supp. 1054, 1059 (W.D. Pa. 1990)).

3

At trial, Plastipak produced significant evidence of Mac-Jam's failure to observe corporate formalities and maintain corporate records. Specifically, evidence was presented that Mac-Jam did not have a corporate stock or minute book, did not have written evidence of any loan agreements that it had allegedly entered into with DePasquale, did not have a written lease for the use of DePasquale's plant for the first ten years of its use, and did not have a written lease for the equipment it used, most of which was held in DePasquale's name. (R. at 285a-291a, 307a-320a, 348a-350a, 373a-378a, 503a, 794a-796a, 817a-818a, 856a-867a, 867a-872a.) Evidence was also presented that Mac-Jam never adopted bylaws, elected directors, or held formal meetings. (R. at 591a-593a, 600a, 742a.) Moreover, Plastipak presented evidence demonstrating the non-functioning of other officers and directors and a general confusion at Mac-Jam with respect to business titles and responsibilities. (R. at 46a, 58a, 266a-272a, 277a-278a, 515a-516a, 591a-595a, 760a-764a, 790a-791a.) Evidence was presented indicating the gross undercapitalization of Mac-Jam, potentially dating back to its incorporation and continuing uninterrupted to its bankruptcy. (R. at 239a-240a, 245a-248a, 501a-502a, 513a-515a, 784a-785a, 793a-797a, 881a-883a.) Testimony was also offered describing the intermingling of DePasquale's and Mac-Jam's finances. For example, evidence was presented that DePasquale paid Mac-Jam debts using his personal checks, used Mac-Jam funds to secure insurance for other properties held in his name, used Mac-Jam funds to secure automobile insurance for his daughters who were not employed by Mac-Jam, and transferred money between personal and business checking accounts such that both were used for business purposes. (R. at 329a-332a, 334a-338a, 391a-399a, 425a-427a, 439a-440a.) Evidence was also presented that Mac-Jam provided unaudited and inaccurately overstated financial statements to Plastipak when Plastipak was evaluating Mac-Jam's credit-worthiness. (R. at 137a-138a, 140a-165a, 291a-300a.) We are satisfied that the evidence submitted to this jury was more than sufficient to support a finding,

4

based upon the totality of the circumstances, that the corporate veil should be pierced. We therefore affirm the District Court's denial of DePasquale's motion for judgment as a matter of law.

        B.      *Motion for a New Trial*

The District Court denied DePasquale's motion for a new trial, which argued both that the verdict imposing alter ego liability was against the weight of the evidence and that the jury had been improperly instructed on the burden of proof regarding the imposition of alter ego liability. When it is argued that the verdict of the jury is against the weight of the evidence, we review the District Court's denial of a motion for a new trial for abuse of discretion. Smith v. Holtz, 210 F.3d 186, 200 (3d Cir. 2000). "[T]he district court ought to grant a new trial on the basis that the verdict was against the weight of the evidence only where a miscarriage of justice would result if the verdict were to stand." Klein v. Hollings, 992 F.2d 1285, 1290 (3d Cir. 1993).

As discussed above, Plastipak produced a wealth of evidence in support of alter ego liability. At trial, DePasquale generally contested the relevance of Plastipak's evidence (R. at 1206a-1209a), and specifically argued that his sons meaningfully participated in Mac-Jam's operations. (R. at 986-990.) DePasquale also maintained that piercing the corporate veil was unwarranted where there was no siphoning of funds from the corporation. (R. at 1207a-1208a.)

The totality of the circumstances must be reviewed when deciding whether the evidence presented is sufficient to justify piercing the corporate veil. Given the significant, if not overwhelming, evidence in this record and considering the nature of the alter ego liability inquiry, we are satisfied that no miscarriage of justice occurred here. The District Court did not abuse its discretion in denying DePasquale's Motion For New Trial based upon the weight of the

5

evidence.[2]

When the District Court denies a motion for a new trial alleging an error of law, our review is plenary. Holtz, 210 F.3d at 200. The "standard of review as to the district court's interpretation of the substantive law of the state in which it sits is also plenary." Waldorf v. Shuta, 896 F.2d 723, 728 (3d Cir. 1990) (citing Compagnie des Bauxites v. Insurance Co. of N. Am., 724 F.2d 369, 371 (3d Cir. 1983)). Thus, the standard of review over the District Court's denial of DePasquale's motion for a new trial on the question of the appropriate burden of proof for an alter ego determination under Pennsylvania law is plenary.

DePasquale contends that a new trial is required because the District Court improperly charged on the burden of proof. DePasquale asserts that alter ego liability must be demonstrated by clear and convincing evidence, rather than a preponderance of the evidence. DePasquale is simply incorrect in this assertion. See Zubik v. Zubik, 384 F.2d 267, 271 n.2 (3d Cir. 1967), (stating that, when applying Pennsylvania law, an alter ego claim must be demonstrated by a preponderance of the evidence); Wheeling-Pittsburgh Steel Corp. v. Intersteel, Inc., 758 F. Supp. 1054, 1058 (W.D. Pa. 1990) (applying the preponderance of the evidence standard to an alter ego determination under Pennsylvania law); MCI Telecomms. Corp. v. Lingle, Civ. A. Nos. 87-5675, 89-1287, 1989 WL 153721, *3 (Bankr. E.D. Pa. Dec. 15, 1989) (applying the same standard under Pennsylvania law). Accordingly, we affirm the District Court's denial of DePasquale's motion for a new trial on the question of the applicable burden of proof.

---

[2]When, as in the instant case, the credibility of the most relevant witness, DePasquale, is at issue, a district court should be reluctant to overrule the decisions of the jury. This reluctance is required "to ensure that a district court does not substitute its 'judgment of the facts and the credibility of the witnesses for that of the jury' .... 'Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of facts.'" Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 211 (3d Cir. 1992) (quoting Lind v. Schenley Indus. Inc., 278 F.2d 79, 90 (3d Cir. 1960) (en banc), cert. denied, 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993)).

## II. Plastipak's Appeal

### A. Exclusion of Testimony

The District Court excluded certain parts of the deposition testimony of Steven Gerson, a certified public accountant who prepared income tax returns for Mac-Jam and DePasquale. The Court concluded that those portions of the testimony constituted impermissible hearsay. We will affirm the decision to exclude this testimony, albeit for reasons different than those stated by the District Court.[3]

Plastipak read deposition testimony of Gerson at trial. This deposition included statements allegedly made to Gerson by Joanne Burke, Mac-Jam's bookkeeper after the 1999 verdict against Mac-Jam. Burke allegedly told Gerson that she knew that DePasquale was attempting to frustrate Plastipak's ability to recover the Mac-Jam debt by conveying his property to his sons for less than market value and then backdating documents in order to give the appearance that the conveyance was made before the judgment had been entered against Mac-Jam.[4] Burke died before the instant trial in 2001. Gerson was also unavailable to testify at that

---

[3] "We may affirm the District Court on any basis which has support in the record." Brown v. Commonwealth of Pennsylvania, 318 F.3d 473, 475 n.1 (3d Cir. 2003) (citing Bernitsky v. United States, 620 F.2d 948, 950 (3d Cir. 1980)).

[4] According to Plastipak's Brief In Opposition to Motion for Protective Order and Motion to Quash Subpoena, Burke spoke to Gerson after the 1999 jury verdict and said that:

    (1)    Although Fred DePasquale was originally disappointed with the outcome of the trial, he met with his counsel and was upbeat at his prospects for avoiding Plastipak's collection efforts.

    (2)    Fred DePasquale transferred to his sons a valuable property in the Oakland section of Pittsburgh at a price well below its market value.

    (3)    Fred DePasquale and his sons backdated the documents underlying that transfer to give the appearance the decision to transfer the Oakland property was made before the

7

trial.  Plastipak wanted to have Gerson's deposition testimony including Burke's alleged statements read to the jury.[5]  (R. at 805a.)

Plastipak argued at trial that Burke's statements about the fraudulent conveyance were not hearsay because they constituted vicarious admissions, which are statements by an agent or servant of a party-opponent regarding issues within the scope of the agency that are against the interests of the party-opponent.  Pursuant to Fed. R. Evid. 801(d)(2)(D), vicarious admissions are not hearsay.[6]  The District Court rejected Plastipak's argument and excluded the portion of Gerson's deposition relating Burke's statements.

Federal Rule of Evidence 403 provides:

---

> verdict; and
> (4)    Fred and Carl DePasquale traveled to Denver, Colorado, to
> execute backdated documents relating to an agreement
> between "Regent Bottling Co." and Vancol Industries, Inc.,
> which would give the appearance that monies Vancol
> contributed to "Regent Bottling Co." were actually a
> secured debt.

(R. at 75a-76a, 721a-722a.)

[5]At a videotaped deposition taken subsequent to this alleged conversation, Burke denied ever having such a conversation with Gerson and stated that she had no knowledge about the parking lot conveyance.  (R. at 722a-723a.)  Plastipak countered that Gerson had testified at his deposition that Burke spoke to him again after her videotape deposition and advised him that she had lied during her videotape deposition and asked him to do the same.  (R. at 738a.)

[6]Under the Federal Rules of Evidence, Rule 801(d)(2)(D) provides:

> A statement is not hearsay if–
> (2) The statement is offered against a party and is
> ...
> (D) a statement by the party's agent or servant concerning a matter
> within the scope of the agency or employment, made during the
> existence of the relationship.

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. Rule 403 is a general admissibility rule that potentially bars the admissibility of otherwise relevant, non-hearsay evidence. See, e.g., Holbrook v. Lykes Bros. Steamship Co., Inc., 80 F.3d 777, 786 (3d Cir. 1996).

Courts presumptively prohibit the use of out-of-court statements that are offered for the truth of the matter asserted because such statements lack the reliability of testimony that is personally proffered at trial, under oath, and subject to cross-examination. The Federal Rules of Evidence provide exceptions to this presumptive prohibition when the statements are made in such a context that they appear more trustworthy or reliable. Notwithstanding these exceptions, however, with each increased level of hearsay there is a decrease in reliability.

In Boren v. Sable, 887 F.2d 1032 (10th Cir. 1989), the Tenth Circuit discussed its concerns about multiple layers of hearsay, as follows:

> "Theoretically, there would be no objection to the number provided each conformed to an exception. Actually, however, as a comment pointed out with every increased level of hearsay there is a corresponding decrease in reliability. Every level of hearsay provides another possibility that the facts were inaccurately reported by the declarant either intentionally or unintentionally, or misunderstood by the person to whom the statement was made.
>
> Certainly the trial judge has discretion under Rule 403 to exclude a statement of multiple hearsay, even if each included portion meets the requirements of an exception, when he finds a statement so unreliable that its probative value is substantially outweighed by the danger of prejudice and confusion."

9

Boren, 887 F.2d at 1036-37 (quoting 4 Weinstein & Berger, Weinstein's Evidence ¶ 805 [01]).

As above indicated, Plastipak offered to read to the jury the transcript of Gerson's deposition in which he related what he was told by Burke about what she had been told by DePasquale. Notwithstanding Rule 801 and any exceptions, this is triple hearsay under the traditional definition of hearsay. Moreover, the circumstances surrounding this testimony create grave concern as to its trustworthiness and reliability.

Gerson was a former employee of Mac-Jam and DePasquale, and at some point his relationship with DePasquale deteriorated. (R. at 806a, 808a.) Evidently Mac-Jam owed Gerson money for work that he had performed. Gerson believed that he would be more likely to recover his money from the bankrupt corporation if Plastipak won its lawsuit against DePasquale. (R. at 728a-729a.) Gerson contacted Plastipak's counsel and offered his cooperation in the lawsuit against DePasquale. At some point, DePasquale threatened Gerson with physical violence if Gerson did not cooperate with DePasquale in the Plastipak lawsuit. (R. at 494a.)

With regard to the statements that Gerson attributes to Burke these statements go to the very heart of the fraudulent conveyance claim. However, the record is unclear as to the specific statements which Burke allegedly made and how Burke acquired the information that is being attributed to her. Under oath at her deposition, Burke denied ever having such a conversation with Gerson, and denied having any knowledge of DePasquale's allegedly fraudulent conveyance. Burke's statement to Gerson in which she allegedly admitted perjury at her deposition was made out of court with no witnesses present.

Although Burke's alleged statements to Gerson about the fraudulent conveyance may not

10

technically constitute hearsay under Rule 801,[7] they are statements made out of court that are

being offered for the truth of the matter asserted therein. Moreover, Gerson is not in court and

there is no way for the jury to assess his credibility. See United States v. Raddatz, 447 U.S. 667,

679 (1980) (explaining that the cold record does not provide the "'look or manner of the witness:

his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness

or consideration'") (citations omitted). Considering the relationship between Gerson and

DePasquale, the uncertainty as to the basis for the statements, the fact that Burke denied ever

making these statements, the multiple layers of hearsay involved and the inability of the jury to

assess Gerson's credibility, we conclude that this evidence is "so unreliable that its probative

value is substantially outweighed by the danger of prejudice and confusion." Accordingly, the

District Court decision to exclude this evidence was proper.

## B.     Post-Trial Injunction

The District Court granted an injunction preventing Plastipak from taking "steps to

execute on or garnish the life insurance policy purchased by DePasquale from the Penn Mutual

Life Insurance Company without first seeking leave of this Court." We read this injunction to

protect from execution those funds that are being held in the Penn Mutual life insurance policy

---

[7]The Third Circuit has stated that an employee working for a corporation can be considered the agent of her supervisor, who is another employee of the corporation, when there is a civil suit against the supervisor personally and not against the corporation. See Lippay v. Christos, 996 F.2d 1490, 1497-98 (3d Cir.1993) (stating that courts apply the federal, common law interpretation of "agency" to the "admission of extra judicial statements by corporate employees for use in civil suits against their supervisors, as distinguished from the corporation themselves"). Such an agency relationship is established when the supervisor, here DePasquale, "personally 'directed [the declarant's] work on *a continuing basis.*'" Id. at 1498 (quoting Boren v. Sable, 887 F.2d 1032, 1041 (10th Cir 1989) (emphasis added in Lippay)).

11

for the benefit of the named beneficiary, DePasquale's wife. In reviewing the District Court's injunction we are called upon to interpret the meaning of the Pennsylvania exemption statute, 42 Pa. Cons. Stat. § 8124. See BA Properties, Inc. v. Gov't of the United States Virgin Islands, 299 F.3d 207, 209 (3d Cir. 2002). The standard of review is therefore plenary. Applying this standard, we agree with the District Court that the clear language of the Pennsylvania exemption statute, 42 Pa.C.S. § 8124, supports this injunction, regardless of the subjective intent of DePasquale when he took out the insurance policy.[8]

The parties have raised the question of whether Plastipak retains the right to execute on any funds that are potentially removed from the life insurance policy in the form of "loans." We agree with Plastipak that once funds have been removed from the life insurance policy by the insured, those funds are no longer exempt pursuant to 42 Pa. Cons. Stat. § 8124 because they are no longer being held in the life insurance policy for the benefit of DePasquale's wife.

Funds that are removed from a life insurance policy in the form of "loans" reduce the "net amount payable" under the policy to the beneficiary. See United States v. Sullivan, 333 F.2d 100, 112-13 (3d Cir. 1964) (stating that "loans" taken from a life insurance policy do not serve to

---

[8]42 Pa. Cons. Stat. § 8124(c) provides that:

> (c) Insurance proceeds.--The following property or other rights of the judgment debtor shall be exempt from attachment or execution on a judgment:
> . . .
> (6) The net amount payable under any annuity contract or policy of life insurance made for the benefit of or assigned to the spouse, children or dependent relative of the insured, whether or not the right to change the named beneficiary is reserved by or permitted to the insured. The preceding sentence shall not be applicable to the extent the judgment debtor is such spouse, child or other relative.

create a creditor-debtor relationship and instead constitute an advance payment on the policy that discharges part of the insurer's ultimate policy obligation to the beneficiary). As the Pennsylvania Supreme Court has explained, an insured has a right under most life insurance policies to demand an advance payment of any sum of money up to the reserve value of the policy, and the enforcement of that contractual right does not create a personal liability in the insured to repay the insurance policy. See In re Schwartz' Estate, 87 A.2d 270, 273 (Pa. 1952); See also 31 A.L.R. 2d 979 §2. This means that if the insured dies with an outstanding loan against his life insurance policy, the estate of the decedent is not obligated to pay back the loan to the life insurance policy. Instead, the life insurance policy merely deducts the "loan" from the net proceeds of the policy that are paid to the beneficiary. Id. Because the exemption statute only exempts the "net amount payable" to the beneficiary under the policy, the removed money is not exempt. Plastipak is, therefore, entitled to execute on those funds removed as "loans." We do not interpret the District Court's injunction to hinder Plastipak's ability to execute on such "loans," and, therefore, we affirm the District Court's granting of the injunction.[9]

## III. Conclusion

For the foregoing reasons, the judgements of the District Court are affirmed.

---

[9]We reject Plastipak's argument that judicial estoppel should prevent DePasquale from arguing that the funds within his life insurance policy are exempt from execution. Judicial estoppel is an inappropriate sanction under these circumstances because it would punish the interests of an innocent third party, DePasquale's wife. Montrose Med. Group Participating Savings Plan v. Bulger, 243 F.3d 773, 777 (3d Cir. 2001).